IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RORY RENIA WHITE,

    Petitioner,               No. CIV S-08-1053 JAM GGH P

    vs.

JOHN C. MARSHALL, et al.,

    Respondents.           <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner alleges that his 2005 guilty plea to one count of transportation of a controlled substance (Cal. Health and Safety Code § 11352(a)) and count of possession of a controlled substance (Cal. Health and Safety Code § 11377(a)) was not voluntary. In particular, petitioner alleges that he was not advised that he waived his right to presentence custody credits as a condition of probation.

        After carefully reviewing the record, the court recommends that the petition be denied.

/////

/////

II. <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. <u>Neelley v. Nagle</u>, 138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. <u>Moore v. Calderon</u>, 108 F.3d 261, 263 (9th Cir. 1997).

In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. <u>Id</u>. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams (Terry)</u>, 529 U.S. at 410-11, 120 S. Ct. at

1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue.  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

III. Background

On February 3, 2005, petitioner plead guilty to the charges set forth above.  Respondent's Exhibit A.  Neither party has provided a court with a copy of the transcript from petitioner's change of plea hearing.  The plea form states that petitioner could be sentenced to prison for thirteen years.  Id.  The plea form also states that the court referred petitioner to probation for consideration for placement in Delancy Street, a residential drug treatment program.  Id.  It was also agreed that if petitioner was not sent to Delancy Street, he would be sentenced to six years in prison, and if he failed Delancy Street he would be sentenced to thirteen

years in prison. Id.

Neither petitioner's plea form nor the minutes from the change of plea hearing contain any information regarding a waiver of presentence custody credits by petitioner. See Respondent's Exhibit A.

On March 3, 2005, petitioner was sentenced to thirteen year suspended sentence in state prison and placed on probation for three years with orders to participate in the Delancy Street residential treatment program. Respondent's Exhibit B.

The minutes from the March 3, 2005, hearing state that if petitioner did not successfully complete Delancy Street, he would waive the credits earned while in the program. Respondent's Exhibit B. Petitioner does not dispute that he was not entitled to these credits when he later violated probation. The minutes contain no information regarding petitioner's waiver of presentence custody credits.

The instant record contains the transcript from the March 3, 2005, sentencing hearing. Respondent's Exhibit F. At sentencing, the issue of presentence custody credits was discussed by the court, the prosecutor and petitioner's counsel at the beginning of the hearing in a discussion regarding the presentence report. Petitioner was not in the court when this conversation took place, although the court took a break so that counsel could discuss the presentence report with petitioner:

> Court: Okay. I'm sure that Mr. Lathrop [petitioner's counsel] is going to want to go over it [presentence report] with his client. Ms. Ring [prosecutor], what are–they are asking for 13 years suspended, right?
>
> Prosecutor: Yes. Delancy Street.
>
> Court: Yeah. That was the bargain that was reached between everybody.
>
> Prosecutor: Yes.
>
> Court: I had a question here. He's got a lot of credits.
>
> Prosecutor: He does.
>
> Court: Was it contemplated that he would be released when a bed becomes

available?

Prosecutor: yes. On page 1 of the terms, they do ask the Court to sentence him to 365 days, but I'm asking that the Court not do that–

Court: Fair enough.

Prosecutor: —and release him whenever a bed is available. It was contemplated that he waive all his past credits in the cases. So part of that was marked, but not all of it on page 2.

Court: Okay. I got you. So Mr. Lathrop, you want to have time to review this with your client? Or if you want, we can proceed and I will give him 13 years. I'll suspend it. I'll give him probation. I'll give him standard terms of probation. He's got to waive all credits on all cases. And I'll order that he attend Delancy Street, and when a bed becomes available, he can be transported, and that can be tomorrow morning. It could be two months from now. I don't know. He's been accepted right?

Petitioner's Counsel: Yes.

Court: So I would assume as soon as they know he's ready for transportation, they'll pick him up and he's out of here. If you want to have time to speak with him, that's fine. I don't want to rush you.

Petitioner's Counsel: Can I talk to him for just a minute?

Court: Not a problem.

Respondent's Exhibit F, transcript, pp. 3-4.

After counsel and petitioner discussed the presentence report, petitioner was brought into the courtroom. Id., p. 4. In discussing the terms of petitioner's sentence the court discussed the issue of credits:

Court: ...Imposition of judgment and sentence is suspended. He's placed on a period of three years formal probation. Is he willing to waive all credits up to today's date?

Petitioner's Counsel: Yes, Your Honor.

Court: Is he willing to waive any credits that he might accumulate in a program if he doesn't complete the program successfully?

Petitioner's Counsel: Yes.

Court: Do you understand that?

Petitioner: Yes.

Court: Are you willing to do that?

Petitioner: Yes.

Court: Good. So hang on a second. He's going to get–he's ordered to serve–hang on–a total of 265 days in the county jail. He'll received credit as follows. In Case 169760, 177 actual, 88 4019 for a total of 265. No, he's not going to get any credits. He's waiving them. Forget it. I fouled up. Okay.

Id., pp. 6-7.

On October 7, 2005, petitioner admitted that he violated probation by failing to complete the residential treatment program. Respondent's Exhibit C. On December 8, 2005, petitioner was sentenced to nine years in prison. Respondent's Exhibit D. Petitioner received no presentence credit for time earned prior to March 3, 2005. Respondent's Exhibit E.

IV. Discussion

Petitioner is arguing that his guilty plea was involuntary because he was not advised that he waived presentence custody credits.[1] "A plea is voluntary [and intelligent] only if it is entered by one fully aware of the direct consequences of his plea ...." United States v. Amador-Leal, 276 F.3d 511, 514 (9th Cir.2002) (citation and internal quotations marks omitted).

Before the court analyzes petitioner's claim, it must clarify three matters. First, although petitioner cites the transcript and minutes from the sentencing hearing in support of his claim, an involuntary plea claim requires the court to consider what petitioner knew at the time he entered his plea, which in this case was February 3, 2005. And, it is petitioner's burden to produce a transcript of the pertinent hearing, if he believes that a violation of his rights took place at the hearing. Parke v. Raley, 506 U.S. 20, 32, 113 S.Ct. 517, 525 (1992). Indeed, even in the absence of a transcript, there is a presumption of regularity (legitimacy) for state court hearings. Id. at 30, 113 S.Ct. at 523. Second, according to the transcript from the sentencing hearing, the

---

[1] Petitioner does not claim that he did not understand that he would waive any credits he earned while in Delancy Street if he violated probation.

waiver of the presentence custody credits was considered a condition of probation and only became relevant if petitioner violated probation and was sentenced to state prison. Third, petitioner alleges no other misunderstanding regarding the terms of his plea and sentence.

The transcript from the March 3, 2005, sentencing hearing suggests that the issue of waiver of presentence credits was first raised in the presentence report, or at least contemplated after the change of plea hearing. The transcript from the sentencing hearing also indicates that the waiver of presentence credits was treated as a condition of probation. For these reasons, it seems unlikely that this issue was discussed at the February 3, 2005, change of plea hearing. However, because the waiver of presentence credits was a collateral consequence of petitioner's plea, the trial court was not constitutionally required to advise petitioner of this waiver when it took his plea on February 3, 2005.[2]

"A consequence is 'direct' where it presents 'a definite, immediate and largely automatic effect' on the defendant's range of punishment." United States v. Kikuyama, 109 F.3d 536, 537 (9th Cir.1997) (quoting United States v. Wills, 881 F.2d 823, 825 (9th Cir.1989)); see also Torrey v. Estelle, 842 F.2d 234, 236 (9th Cir.1988) ( "The distinction between a direct and

---

[2] This is so because it was unclear at the plea hearing whether petitioner would qualify for Delancy Street. The matter was sent to probation for *consideration*. In the event petitioner did not qualify for Delancy Street, an alternative prison sentence was to be imposed. After it became clear that petitioner could be sentenced to probation which included Delancy Street and no jail time, the conditions of probation attendant thereto were contemplated. While it would not have been impossible to have worked out a conditional waiver of pre-sentence credits deal ahead of the plea in the event Delancy Street were ordered, pre-sentence credits simply do not appear to have been on the mind of anyone at the time of plea – waiver was not part of any plea bargain. Petitioner certainly produced no evidence to suggest otherwise. A plea bargain is not defective because it fails to address every possible future consequence. For example, a petitioner could not claim his plea to a three year sentence was unknowing because he did not realize he would be incarcerated at a particularly unpleasant prison.
    The plea bargain here was honored, and the collateral details of that bargain were addressed at sentencing. Nor was the ultimate waiver of pre-sentence credits unfair. As the transcript makes clear, Delancy Street was ordered as a condition of probation in lieu of 365 days jail. It would not have made sense to waive the jail time and *still* give jail pre-sentence credits. In any event, petitioner could have told the judge at sentencing that he did not want probation (Delancy Street) when he understood that a condition of probation involved the waiver of pre-sentence credits, but he did not.

7

collateral consequence of a plea turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment."). Thus, "[b]efore a court may accept a defendant's guilty plea, the defendant must be advised of the range of allowable punishment that will result from his plea." Id. at 235 (citation and internal quotation marks omitted). "The essential ingredient is notice of 'the maximum possible penalty provided by law.' " United States v. Barrios-Gutierrez, 255 F.3d 1024, 1027 (9th Cir.2001) (quoting Fed. R. Crim. P. 11(c)). In addition, where the consequence is contingent upon action taken by an individual or individuals other then the sentencing court – such as another governmental agency or the defendant himself – the consequence is generally "collateral." See Kikuyama, 109 F.3d at 537; Torrey, 842 F.2d at 236.

The waiver of presentence custody credits was a collateral consequence of petitioner's plea because it was contingent on petitioner violating probation. In addition, the waiver of the presentence custody credits did not have a definite, immediate or largely automatic effect on petitioner's range of punishment. There is no claim by petitioner that at the time he plead guilty he did not understand that the maximum sentence authorized by his plea agreement was thirteen years. Accordingly, petitioner's claim that his guilty plea was involuntary because he was not advised of the waiver of presentence custody credits is without merit.

Referring to the March 3, 2005, transcript, petitioner also argues that the sentencing judge did not advise him that he was waiving presentence custody credits. This court finds that the sentencing judge clearly advised petitioner that he waived these credits. Any claim by petitioner that after March 3, 2005, he did not understand this consequence of a probation violation is disingenuous.

After conducting the AEDPA review, the court finds that the instant claim is without merit and should be denied.

\\\\\

\\\\\

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   08/03/09

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

wh1053.157